UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| MARIO SIMON-MARCOS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| DANIEL P. MEJIA and MEJIA PRODUCE, LLC; | : | Civil Action No.: ___1:16-CV-55___ |
| | : | |
| Defendants. | : | |
| | : | |

**COMPLAINT**

**I. PRELIMINARY STATEMENT**

1.      Plaintiff is a guest worker from Guatemala recruited by Defendants, to work in and around Grady County, Georgia in 2014. Plaintiff files this action to secure and vindicate his rights under the Fair Labor Standards Act ("FLSA"), and under Georgia contract law.

2.      Defendants violated the FLSA by failing to pay Plaintiff at least the required average minimum hourly wage for every compensable hour of labor performed in a workweek, including by failing to reimburse his pre-employment expenses incurred primarily for the benefit and convenience of Defendants as required by law.

3.      Defendants' conduct also breached Plaintiff's employment contract by failing to pay the contractually promised wages for all hours worked.

4.      Plaintiff seeks his unpaid wages, liquidated damages, actual, incidental, consequential, compensatory, and statutory damages, pre- and post-judgment interest, declaratory relief, costs, and reasonable attorneys' fees.

1

## II. JURISDICTION AND VENUE

5.       This Court has jurisdiction of this action pursuant to:

      a.       28 U.S.C. § 1331 (Federal Question);

      b.       29 U.S.C. § 1337 (Interstate Commerce);

      c.       29 U.S.C. § 216(b) (FLSA); and

      e.       28 U.S.C. § 1367 (Supplemental).

6.       This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiff's federal FLSA claims that they form part of the same case or controversy under Article III, Section 2 of the U.S. Constitution.

7.       Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and M.D. Ga. Local Rule 3.4, because a substantial part of the claims arose in the Middle District of Georgia.

## III. PARTIES

### *Plaintiff*

8.       At all times relevant to this complaint, Plaintiff Mario Simon-Marcos was an H-2A guest worker admitted into the United States to work for Defendants under the auspices of the H-2A program, 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1184(c)(1), and 20 C.F.R. § 655.100 *et seq*.  Plaintiff's FLSA consent-to-sue form is attached hereto as Exhibit A.

9.       Plaintiff was an employee of Defendants, within the meaning of 29 U.S.C. §§ 203(e)(1) and 203(g), in the 2014 season.

### *Defendants*

10.      Defendant Daniel P. Mejia is a Farm Labor Contractor registered with the U.S. Department of Labor, with registration number C-04-634876-A-15-R.

11.     At all times relevant to this complaint, Defendant Daniel P. Mejia was the day-to-day manager of Defendant Mejia Produce, LLC and established its business practices.

12.     Defendant Daniel P. Mejia may be served at his Georgia residence, 574 Thomas Road, Cairo, GA 39828.

13.     Defendant Daniel P. Mejia, if outside the jurisdiction of the Middle District of Georgia or otherwise unavailable to accept service, may be served with process by service of process to the Secretary of the U.S. DOL, upon court designation of the Secretary as an agent to accept service.  29 U.S.C. § 1812(5).

14.     At all times relevant to this complaint, Defendant Mejia Produce, LLC was a Limited Liability Corporation organized under the laws of the State of Georgia.  Defendant Mejia Produce, LLC may be served through its Manager/Member and President Daniel P. Mejia, or at its principal office 16 Forest Parkway Stalls 23-24 Shed 09, Forest Park, GA 30297.

15.     Defendant Mejia Produce, LLC was an employer of Plaintiff because it had a place of business in the U.S. and a means by which it could be contacted for employment, and had a valid Federal Employer Identification Number.

## IV. THE H-2A PROGRAM

16.     The H-2A program was created by 8 U.S.C. § 1188 and is implemented pursuant to the regulations found at 20 C.F.R. § 655.100 *et seq.* (2010).  An agricultural employer in the United States may import H-2A workers if the "U.S. DOL certifies that (1) there are not enough U.S. workers to perform the job and (2) the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed."  8 U.S.C. § 1101(a)(15)(H)(ii)(a); 8 U.S.C. § 1188(a)(1).

17.     Employers must file a temporary labor certification application with the U.S. DOL's Employment and Training Administration.  20 C.F.R. § 655.130 (2010).  The application has to include a job offer, known as a "job order," that complies with the requirements of 20 C.F.R. § 655.122 (2010).  The job order contains the terms to be offered to both foreign H-2A guest workers and domestic workers throughout the United States.  *See* 20 C.F.R. § 655.121(a)(2).

18.     In 2014, Defendants filed job order GA 8140058 with the Georgia Department of Labor (attached hereto as Exhibit B), and an application for a temporary labor certification with the U.S. Department of Labor.

19.     Job order GA 8140058 submitted by Defendants advertised for 61 temporary positions, with work to begin in January 16, 2014 and continue until September 9, 2014.

20.     Job order GA 8140058 indicated that workers would work in tomatoes, peppers, beans, squash, eggplant, cucumber, onion, and mustard and collard greens.

21.     Job Order GA 8140058 listed the rate of pay for this work as $9.78 per hour, which was the applicable adverse effect wage rate ("AEWR") for the prior year of 2013, *see* 78 Fed. Reg. 1,259 (Jan. 8, 2013).

22.     Defendants were obligated to promise an hourly wage of $10.00 per hour, which was the applicable adverse effect wage rate ("AEWR") for the year of 2014, *see* 79 Fed. Reg. 664, 664-665 (Jan. 6, 2014).

23.     Prior to the beginning of work, Defendants executed a written document promising to pay Plaintiff $10.00 per hour.

24.     The terms and conditions of the job order and the promise to pay $10.00, together with the requirements of 20 C.F.R. part 655, constituted an offer of employment, which when

accepted, created an employment contract between Defendants and Plaintiff.  20 C.F.R.

§ 655.103(b) (definition of "work contract").

25.     The H-2A employment contract at issue here incorporates a regulatory definition

of employer found at 20 C.F.R. § 655.103(b) and the contract contained a promise to "comply

with applicable Federal and State minimum wage . . . and other employment-related laws"

including the FLSA.  *See* 20 C.F.R. § 655.135(e).

26.     In promising to pay the federally mandated AEWR, Defendants also promised to

pay that wage free and clear without deduction of items for the employer's benefit or without

reducing an employee's wages by shifting costs to their employees.

27.     In the employment contracts Defendants also promised that workers would be

paid their subsistence expense for travel from the place where the worker came and return travel

back to that place each year as required by 20 C.F.R. § 655.122(h).

28.     The minimum daily subsistence amount as published in the Federal Register and

as incorporated into Plaintiffs'  and other similarly situated workers' contracts was $11.58 in

2014, 79 Fed. Reg. 12,528 (March 5, 2014).

### V. STATEMENT OF FACTS

29.     Defendants recruited Plaintiff in Guatemala in 2014 with an offer of employment

under the terms of an H-2A job order.

30.     Plaintiff accepted the offer of employment.

31.     Plaintiff incurred various immigration, processing, and travel-related expenses in

order to come to work for Defendants.

32.     Plaintiff paid, at his own expense, visa and processing fees in excess of $180 in

order to obtain the H-2A visa.

33.     In order to comply with the Defendants' hiring processes, Plaintiff traveled, at his own expense, from his home to the U.S. Embassy in Guatemala City, Guatemala for the interview necessary to obtain an H-2A visa.

34.     Plaintiff's travel expenses from his home to Guatemala City exceeded $20.

35.     Plaintiff incurred expenses for lodging while he completed a visa application form, attended a consular interview, and waited for the visa application to be processed and for the visas to be issued.

36.     In order to obtain the job opportunity, Plaintiff was required to and did pay a fee to Defendants of approximately $200.

37.     Following the issuance of the H-2A visa, Plaintiff was required to and did pay $900 for a flight to the United States.

38.     Plaintiff and a small group of other workers entered the United States on or around March 24, 2014.

39.     Larger groups of other workers from Guatemala, as well as Mexico, arrived in the United States to work under the H-2A job order at later dates.

40.     The expenditures set out in paragraphs 31 through 37 were primarily for the benefit of the Defendants within the meaning of 29 C.F.R. §§ 531.32(c) and 778.217.

41.     The expenditures set out in paragraphs 31 through 37 were made before receipt of Plaintiff's first paycheck.

42.     Defendants failed to reimburse the Plaintiff during the first workweek for the costs described in paragraphs 31 through 37, resulting in Plaintiff's first week wages falling well below the minimum wage.

43.     Plaintiff worked for Defendants in Georgia harvesting tomatoes and other agricultural crops, including crops not listed on the H-2A job order, such as blueberries.

44.     Defendants also transported Plaintiff, and other workers, to North Carolina, where they worked harvesting apples.

45.     Plaintiff did not receive payment for all compensable hours worked, as required by the FLSA and his employment contract.

46.     Plaintiff was paid on a piece-rate basis for much of his work, such as harvesting produce, such that he was paid according to the amount of crops harvested, without regard to the number of hours worked.

47.     Plaintiff was paid on an hourly basis for some work, such as staking tomatoes, at a rate below the promised wage rate.

48.     In some or all weeks, Plaintiff's weekly earnings fell below the applicable federal minimum wage.

49.     In some or all weeks, Plaintiff's weekly earnings fell below the contractually-promised wage of $10.00 for each hour worked.

50.     Defendants did not supplement Plaintiff's weekly earnings to ensure that he received the wages required by the FLSA or the minimum hourly wage set forth in the employment contract.

51.     Defendants failed to make, keep, preserve, and retain accurate employment records as required by the FLSA, 29 U.S.C. § 211(c).

52.     Defendant's actions described in paragraphs 36, 46, and 51 indicate that his underpayment of wages to Plaintiff was willful.

## COUNT I

## FLSA MINIMUM WAGE

53.     Plaintiff incorporates each of the allegations contained in paragraphs 1 through 52 above by reference.

54.     This Count sets forth a claim by Plaintiff for damages for Defendants' violations of the FLSA pursuant to 29 U.S.C. § 216 (b).

55.     As detailed in paragraphs 42 and 45 through 50 above, Defendants failed to pay Plaintiff at least the required average minimum hourly wage for every compensable hour of labor performed in the workweeks spent working, as required by 29 U.S.C. § 206(a).

56.     The violations of the FLSA resulted, in part, from Defendants' failure to reimburse the Plaintiff for expenses as detailed in paragraphs 31 through 37 above, which Plaintiff incurred primarily for the benefit or convenience of Defendants prior to Plaintiff's first week of work. When these expenses were subtracted from Plaintiff's first week's pay, as required by law, Plaintiff's earnings fell well below the required average minimum hourly wage for that pay period, and were negative.

57.     The violations set forth in this Count resulted, in part, from Defendants' practice of paying Plaintiff, and the other workers, based on the quantity of the produce cultivated or harvested without regard to the number of hours Plaintiff worked, as detailed in paragraph 46 above.

58.     The violations set forth in this Count also resulted, in part, from Defendants' failure to record and pay Plaintiff for all hours worked as described in paragraphs 45 and 51 above.

59.     Defendants' violations of the FLSA's minimum hourly wage were willful, within the meaning of 29 U.S.C. § 255(a), as demonstrated by the allegations in paragraphs 36, 46, and 51 above.

60.     Pursuant to 29 U.S.C. § 216(b), as a result of Defendants' violations of the FLSA set forth in this Count, Plaintiff is entitled to recover the amount of his unpaid wages and an equal amount as liquidated damages for each workweek in which he was suffered or permitted to work for Defendants during which he earned less than the applicable minimum wage.

## COUNT II

## CONTRACT

61.     Plaintiff incorporates each of the allegations contained in paragraphs 1 through 52 above by reference.

62.     This Count sets forth a claim by Plaintiff for damages for Defendants' breach of the rate of pay provisions and reimbursement provisions of the Plaintiff's employment contracts, as described in paragraphs 22 through 28, above.

63.     This Count sets forth Plaintiffs' claims for declaratory relief and damages for Defendants' breach of the attestations required by 20 C.F.R. § 655.135(e), with respect to the H-2A contract, and contained in Plaintiff's employment contract.

64.     Defendants offered employment on the terms and conditions set out in 2014 job orders, and temporary labor certification application, and as described in paragraphs 16 through 28 above.

65.     Plaintiff accepted Defendants' offer.

66.     Defendants breached the Plaintiff's employment contracts by failing to pay Plaintiff the promised minimum hourly wage of $10.00, as described in paragraph 49 above.

67.     Defendants also breached Plaintiff's employment contracts by failing to pay Plaintiff at least the applicable federal minimum wage for each compensable hour of work in a workweek, as set forth above.

68.     As a direct consequence of Defendants' breach of the Plaintiff's employment contract, Plaintiff suffered economic injury.

69.     Defendants are liable to Plaintiff for the damages that arose naturally and according to the usual course of things from Defendants' breach, as provided by federal common law and/or O.C.G.A. § 13-6-2, including unpaid wages, damages arising from the delay, and prejudgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

(a)     Under Count I:

1.     Declare that Defendants have violated the FLSA as specified above in Count I;

2.     Grant judgment against Defendants and in favor of Plaintiff in the amount of his respective unpaid wages as proved at trial, plus an equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b); and

3.     Award Plaintiffs attorneys' fees pursuant to 29 U.S.C. § 216(b).

(b)     Under Count II:

1.     Declare that all Defendants have breached their employment contract with Plaintiff as specified in Count II, above;

2.     Grant judgment against all Defendants and in favor Plaintiff, in the amount of Plaintiff's damages as arose naturally and according to the usual course of things

from such breach and such as the parties contemplated, when the contract was

made, as the probable result of such breach;

(d)     Award Plaintiff pre- and post-judgment interest as allowed by law;

(e)     Cast all costs upon Defendants; and

(f)     Award Plaintiff such further relief, at law or in equity, as this Court deems just and

proper.

Respectfully submitted this 29th day of March, 2016,

/s/Dawson Morton
Dawson Morton
Georgia Bar No. 525985
Lisa J. Krisher
Georgia Bar No. 429762
Georgia Legal Services Program
104 Marietta Street NW, Suite 250
Atlanta, GA  30303
Phone:  (404) 463-1633
Fax:      (404) 463-1623

*Attorneys for Plaintiff Mario Simon
Marcos*